**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CARL ROBERT ALVAREZ,**
        **Plaintiff,**

**-vs-**                                              **Case No. 6:08-cv-1024-Orl-28DAB**

**BILL McCOLLUM, in his official capacity**
**as the ATTORNEY GENERAL OF THE**
**STATE OF FLORIDA, and NORMAN R.**
**WOLFINGER, in his official capacity as**
**the STATE ATTORNEY FOR THE**
**EIGHTEENTH JUDICIAL CIRCUIT OF**
**FLORIDA,**
        **Defendants.**
_____

## ORDER

Plaintiff Carl Robert Alvarez ("Alvarez") brings the instant action pursuant to 42 U.S.C. § 1983, seeking equitable relief in the form of the compelled release of physical evidence collected in connection with crimes of which he was convicted in a Florida state court in 1991. Alvarez wishes to obtain this evidence in order to have it subjected to DNA testing.

This matter is now before the Court on Defendants' Renewed Motion to Dismiss (Doc. 37) for failure to state a cause of action. Alvarez has filed a Response (Doc. 42) to the motion. Having considered the parties' submissions and pertinent law, I conclude that the motion to dismiss must be granted and that all six of Alvarez's claims must be dismissed.

### I. Background[1]

In 1991, Alvarez was convicted in a Florida state court of first-degree murder, sexual

---

[1] The Background section of this Order has been compiled from the allegations of Alvarez's Complaint (Doc. 1).

battery, and aggravated child abuse. The victim was Alvarez's seven-year-old stepson. Alvarez was sentenced to life imprisonment. Alvarez alleges that there was no physical evidence linking him to the crimes and that his "conviction was based exclusively on his pre-trial statements denying responsibility for the crimes but which the State claimed conflicted with the injuries sustained by" the victim. (Compl. ¶ 1).

During the investigation of the case against Alvarez, the state collected physical evidence from the residence shared by Alvarez and the victim, including several items of clothing and two towels. (Id. ¶ 2). This evidence was not submitted for DNA testing at the time of Alvarez's trial; according to the Complaint, "[s]ophisticated DNA tests were not then generally available." (Id. ¶ 3). The blood found on the victim's pajama top was, according to Alvarez, "insufficient to allow testing for DNA" in 1990, but "DNA testing can now be performed on even a single cell and even on degraded evidence." (Id. ¶ 4). Alvarez "proposes to perform DNA tests (at his expense) using the STR testing system, which is now being used by the FBI and State of Florida to operate the federal and state DNA databank systems." (Id. ¶ 5). Alvarez contends that if the "testing of the blood found on [the victim's] pajama top or other biological evidence found on the [identified items of evidence] reveals a genetic profile that does not belong to [Alvarez] or [the victim], this profile could then be placed into the national DNA databank and potentially identify the actual perpetrator of this crime." (Id.).

The physical evidence that Alvarez seeks allegedly "has been preserved and is currently in the possession of either the Seminole County Sheriff's Office or the Office of the Clerk of the Circuit Court for the Eighteenth Judicial Circuit in Seminole County, Florida." (Id.

¶ 25).  According to Alvarez, the Defendants are responsible for the formulation of policy regarding access to evidence within the possession of the attorney general's office, state law enforcement agencies, and the state attorney's office and "for determining whether a convicted person will be provided access to evidence for post-conviction DNA testing."  (Id. ¶¶ 11 & 12).

In November 2003, Alvarez filed a "Petition for Post-Sentencing DNA Testing" in the Circuit Court in and for Seminole County, Florida, Eighteenth Judicial Circuit, under Florida Rule of Criminal Procedure 3.853 and section 925.11, Florida Statutes.  (Id. ¶ 26; Attach. 2 to Compl.).  After Alvarez filed several amended petitions, the state court judge held a hearing in June 2006, and on July 7, 2006 the court denied Alvarez's Third Amended Petition.  (Compl. ¶¶ 30-31; see also State Court Order, Attach. 6 to Compl.).  That denial was affirmed by Florida's Fifth District Court of Appeal on March 6, 2007.  (See Compl. ¶ 32).

Alvarez filed the instant action pursuant to 42 U.S.C. § 1983 on June 24, 2008. Defendants initially filed a motion to dismiss on August 9, 2008.  (Doc. 13).  However, on January 21, 2009, this Court stayed the case in light of the granting of certiorari by the United States Supreme Court in District Attorney's Office for Third Judicial District v. Osborne, 129 S. Ct. 488 (Nov. 3, 2008).  The Supreme Court decided Osborne in 2009,[2] and thereafter Alvarez moved to lift the stay and reopen this case, (Doc. 28).  The case has since been reopened, and Defendants' renewed motion to dismiss (Doc. 37, filed August 19, 2010), is

---

[2] 129 S. Ct. 2308.

now ripe for ruling.

## II. Discussion

### A. Propriety of § 1983 Action

As an initial matter, it is noted that the issue of whether a prisoner may seek access to evidence for DNA evidence via § 1983 is currently pending before the United States Supreme Court. Skinner v. Switzer, 363 F. App'x 302 (5th Cir. 2010), cert. granted, 130 S. Ct. 3323 (May 24, 2010) (No. 09-9000). Previously, the Supreme Court has assumed without deciding that such a claim may be brought via § 1983, see, e.g., Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 129 S. Ct. 2308, 2318-19 (2009), and the Eleventh Circuit Court of Appeals has expressly allowed claims seeking evidence for DNA testing to be brought in this manner, see Cunningham v. Dist. Attorney's Office for Escambia Cnty., 592 F.3d 1237, 1255-56 (11th Cir. 2010) (citing Bradley v. Pryor, 305 F.3d 1287, 1290 (11th Cir. 2002)). Until the Supreme Court decides the question, I am, of course, bound to follow this Eleventh Circuit precedent and to allow Alvarez's claims to be addressed under § 1983. See, e.g., Thompson v. Rundle, No. 10-10029, 2010 WL 3279158, at *2 (11th Cir. Aug. 20, 2010) (noting the granting of certiorari in Skinner and that Eleventh Circuit panel precedent must be followed until the issue is decided otherwise).

### B. The *Osborne* Decision

In Osborne, an Alaska prisoner who had been convicted of a 1993 kidnapping, assault, and sexual assault filed suit in a federal district court pursuant to 42 U.S.C.§ 1983

seeking to obtain crime scene evidence for STR testing[3]—the same type of testing sought in the instant case. Citing several provisions of the U.S. Constitution, Osborne asserted that he had a federal constitutional right to obtain the evidence for DNA testing. The district court found in Osborne's favor and the Ninth Circuit Court of Appeals affirmed, finding a procedural due process right to access such evidence in postconviction proceedings akin to the right to be provided exculpatory evidence prior to trial that was recognized in Brady v. Maryland, 373 U.S. 83 (1987). See 129 S. Ct. at 2315 (discussing lower courts' rulings).

The Supreme Court, however, reversed. As stated by the Court, Osborne proposed "the recognition of a freestanding and far-reaching constitutional right of access to this new type of evidence." Id. at 2312. The Supreme Court decided that "[t]here is no reason to constitutionalize the issue in this way," id., and rejected Osborne's assertions of a freestanding constitutional right to access evidence for DNA testing.

Noting that "[p]rocess is not an end in itself, the Court examined Osborne's assertions of an entitlement to, or "liberty interest" in, establishing his innocence "even after a fair trial has proved otherwise." Id. at 2319. The Court did observe that Osborne had a liberty interest under Alaska law in demonstrating his innocence with new evidence, id., but the Court found no due process violation.

The Supreme Court concluded that the task of determining "how to harness DNA's power to prove innocence without unnecessarily overthrowing the established system of criminal justice . . . belongs primarily to the legislature." Id. at 2316. As observed by the

---

[3]As explained in Osborne, "STR testing is extremely discriminating, can be used on small samples, and is 'rapidly becoming the standard.'" 129 S. Ct. at 2315 n.3.

Court, at the time of the Osborne decision forty-six states had enacted statutes specifically addressing access to DNA evidence. Id. After reiterating that "'[w]hen a State chooses to offer help to those seeking relief from convictions,' due process does not 'dictat[e] the exact form such assistance must assume,'" the Supreme Court held that "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." Id. at 2320 (quoting Pennsylvania v. Finley, 481 U.S. 551, 559 (1987)). The Court found that Alaska's procedures—available through its general postconviction statute rather than a specific DNA provision—did not on their face deprive Osborne of due process and that Osborne could not argue that the procedures did not work in practice because he had not sought to employ Alaska's procedures before filing his § 1983 suit in federal court. The Court also declined to recognize a substantive due process right in obtaining evidence for DNA testing or to agree with any other basis put forth by Osborne for establishment of a constitutional right to such evidence or testing.

### C. Application to Alvarez's Claims

In his Complaint, Alvarez asserts six claims for relief: (1) a Fourteenth Amendment due process claim; (2) a claim of actual innocence based on the Fourteenth Amendment Due Process Clause; (3) an Eighth Amendment cruel and unusual punishment claim; (4) a Sixth Amendment confrontation and compulsory process claim; (5) a claim of denial of access to courts and equal protection under the Fourteenth Amendment's Due Process and Equal Protection Clauses; and (6) a clemency claim. These claims—most of which are, in essence, alternative arguments for establishment of a "liberty interest" under the constitution as a basis for due process claim—are foreclosed by Osborne or otherwise fail to state a

cause of action.

In his first claim, Alvarez alleges a deprivation of due process without specifying whether he is alleging a substantive due process right or a violation of procedural due process. Regardless of which type of due process deprivation is asserted, however, this claim fails.

In Osborne, the Supreme Court declined to recognize a substantive due process right to DNA testing, and thus Alvarez cannot prevail on this theory. And, with regard to procedural due process, the Supreme Court explained that federal courts will defer to a state's postconviction relief procedures unless those procedures are "fundamentally inadequate to vindicate the substantive rights provided." 129 S. Ct. at 2320; see also Thompson, 2010 WL 3279158, at *3 (noting that after Osborne, the procedural due process analysis consists of determining "whether the state procedure governing postconviction access to DNA evidence is adequate"). Alvarez does not allege how Florida's legislatively-created DNA access procedures are fundamentally inadequate on their face, and I do not discern them to be so.[4]

The Eleventh Circuit Court of Appeals has, since Osborne, rejected a facial challenge to Florida's DNA scheme. See Thompson, 2010 WL 3279158, at *3 (concluding that the plaintiff "failed to show that [Florida Rule of Criminal Procedure] 3.853 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked

---

[4]This Court's discussion of due process assumes arguendo that DNA evidence could exonerate Alvarez, for "[i]f there is no possibility that DNA evidence could exonerate the prisoner, no procedural due process right has been violated." Thompson, 2010 WL 3279158, at *3.

as fundamental' or 'transgresses any recognized principle of fundamental fairness in operation'" (quoting Osborne, 129 S. Ct. at 2321)). Moreover, a similar New York statute has been upheld as facially valid. See McKithen v. Brown, 626 F.3d 143, 153-54 (2d Cir. 2010) (finding that New York's "reasonable probability of a more favorable verdict" standard—essentially the same standard provided by Florida law—was less stringent than the Alaska standard approved in Osborne and that therefore New York's procedure likewise passed constitutional muster). Thus, Alvarez's facial procedural due process challenge fails.

Moreover, to the extent that Alvarez alleges error in the manner in which the state courts applied the statutory procedures to his particular case, this Court lacks jurisdiction under the Rooker-Feldman doctrine to review the claim. See id. at 154-55 (finding that Rooker-Feldman doctrine barred as-applied challenge to New York DNA access statute and that the proper vehicle to challenge state court's decision denying request for access to evidence was appeal to New York Appellate Division); In re Smith, 349 F. App'x 12, 15 (6th Cir. 2009) ("[B]y complaining that the [Michigan] state trial court wrongfully denied him the DNA evidence because rejection of his petition was improper—but not complaining that the statute itself is flawed—Smith is 'complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment,' which is clearly barred by Rooker-Feldman." (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005))). Alvarez challenges the state court's denial of his petition for relief—asserting, for example, that "the State court arbitrarily ignored material facts," (Doc. 42 at 6), but this federal district court cannot review such decisions.

In his second claim—designated as an "actual innocence" claim—Alvarez alleges that

"Defendants have deprived [him] of the opportunity to make a conclusive showing that he is innocent of the crimes for which he is currently incarcerated although he is, in fact, innocent." (Compl. ¶ 40). This claim is foreclosed by the Supreme Court's decision in Osborne and the Eleventh Circuit's decision in Cunningham. The Cunningham court agreed with the claimant's concession that his actual innocence claim—based on Herrera v. Collins, 506 U.S. 390 (1993)—did not survive Osborne, see 592 F.3d at 1255, and Alvarez's actual innocence claim—also based on Herrera, (see Doc. 42 at 13)—does not survive it either.

In his third claim, Alvarez alleges that "Defendants have deprived [him] of the opportunity to make a conclusive showing of actual innocence while serving a life sentence, in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment." (Compl. ¶ 42). Defendants assert that a claim seeking access to evidence is not viable as an Eighth Amendment claim. In response, Alvarez cites only one piece of authority—part of Justice Souter's dissenting opinion in Kansas v. Marsh, 548 U.S. 163 (2006), a case involving the constitutionality of the Kansas death penalty statute. (See Doc. 42 at 14). This Court finds no basis for recognizing a right to access evidence for DNA testing under the Eighth Amendment, and this count fails to state a cause of action.

In his fourth claim, Alvarez alleges that "Defendants have deprived [him] of his right to present evidence of innocence in state and federal court, in violation of the Confrontation and Compulsory Process Clauses of the Sixth Amendment." (Compl. ¶ 44). In his memorandum, Alvarez relies on the "compulsory process" component of the Sixth Amendment and argues that he has a right "to put forward evidence that might influence the determination of guilt or innocence." (Doc. 42 at 14). However, Alvarez has already been

found guilty at a trial that is not alleged to have been unfair. Cf. Osborne, 129 S. Ct. at 2319-20 (noting, in its due process analysis, that "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man" and that "[t]he State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief" and holding that Brady v. Maryland is "the wrong framework" for analyzing extent of due process right after conviction).  Alvarez does not cite any authority for employing the Sixth Amendment as a means to access DNA evidence after conviction, and this Court declines his invitation to find that the Sixth Amendment provides such a right.  Alvarez's fourth claim thus fails.

In his fifth claim, Alvarez brings an access-to-courts claim, alleging that "Defendants have deprived [him] of the opportunity to effectively litigate his claim that he is innocent of the crime for which he is currently incarcerated, thereby preventing [him] from access to the state and federal courts to obtain legal relief." (Compl. ¶ 46).  However, "[i]n order to establish a violation of the right to access to the courts, . . . a prisoner must show an actual injury"—a requirement that "derives from the constitutional doctrine of standing." Cunningham, 592 F.3d at 1271.  Alvarez has not shown an actual injury.

"The injury requirement means that the plaintiff must have an underlying cause of action the vindication of which is prevented by the denial of access to the courts." Id.  In Cunningham, the prisoner did not seek to employ state court mechanisms for obtaining DNA evidence before filing his § 1983 case, and the Eleventh Circuit found that "the defendants' out-of-court refusal to release evidence for DNA testing in no way prevents Cunningham from asking a state court to order release of that evidence." Id. at 1272.  Here, Alvarez **did**

seek release of the evidence in a Florida state court, but his request was denied. However, he was not denied access to the courts to seek that evidence by Defendants' refusal to turn over the evidence out of court. Alvarez's fifth claim therefore fails.[5]

Finally, in his sixth claim, Alvarez alleges that Defendants "have deprived [him] of his right to avail himself of the opportunity to apply for executive clemency and the function that executive clemency serves in preventing the violation of constitutional rights that would arise from continued incarceration of an inmate who can make a showing of actual innocence." (Compl. ¶ 48). The Supreme Court's Osborne decision is determinative of this claim.

The Osborne Court rejected the clemency-based claim before it, noting that it had previously "held that noncapital defendants do not have a liberty interest in traditional state executive clemency, to which no particular claimant is *entitled* as a matter of state law." 129 S. Ct. at 2319 (citing Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 464 (1981)). The Court squarely held that "Osborne therefore cannot challenge the constitutionality of any procedures available to vindicate an interest in state clemency." Id.; see also Cunningham, 592 F.3d at 1255 (agreeing with claimant's concession that his clemency-related claim did not survive Osborne). The sixth claim in the instant case therefore fails to state a cause of action.

---

[5]Alvarez also labels this fifth claim as an equal protection claim, but the claim does not state a cause of action for violation of the Equal Protection Clause. Such a claim would consist of allegations that Alvarez belongs to a protected class and has been treated differently than others similarly situated. In his response memorandum, Alvarez again uses the label "equal protection" in discussing his access to courts claim, but he does not explain how a violation of equal protection has occurred. (See Doc. 42 at 15).

### III. Conclusion

In sum, none of Plaintiff's six claims states a claim for which relief can be granted by this Court. Defendants' Renewed Motion to Dismiss (Doc. 37) is **GRANTED**. This case is **DISMISSED**, and the Clerk is directed to close this file.

**DONE** and **ORDERED** in Orlando, Florida this 14th day of January, 2011.

*[signature]*
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record